**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IVAN MILLER** | **CIVIL ACTION NO.** |
| **VERSUS** | **24-524-JWD-EWD** |
| **COMMISSIONER OF SOCIAL SECURITY** | |

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on July 28, 2025.

                                                 **ERIN WILDER-DOOMES**
                                                **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IVAN MILLER                                                                CIVIL ACTION NO.

VERSUS                                                                          24-524-JWD-EWD

COMMISSIONER OF SOCIAL SECURITY

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Ivan Miller ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits ("DIB").[1] Plaintiff has filed a Memorandum in Support of Appeal[2] and the Commissioner has filed an Opposition Memorandum.[3]

Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision, and the correct legal standards were applied. Accordingly, it is recommended that the Commissioner's decision be affirmed.

**I.    PROCEDURAL HISTORY**

On July 1, 2021, Plaintiff filed an application for DIB alleging disability beginning July 31, 2019.[4] At the time of the application, the Commissioner determined that the date that Plaintiff

---

[1] *See* R. Doc. 9-6, pp. 2-3, 6-17 (application for DIB and application summary, which list application dates of July 6, 2021 and July 7, 2021) *but see* R. Doc. 9-6, p. 33 (Plaintiff's earnings history records, which list a July 1, 2021 filing date, which is consistent with the finding of the administrative law judge at R. Doc. 9-3, p. 18); and R. Doc. 9-3, pp. 2-6 (Notice of Appeals Council Action). References to all documents filed in this case are designated by "R. Doc. __."

[2] R. Doc. 13 and *see* Reply brief at R. Doc. 15.

[3] R. Doc. 14.

[4] R. Doc. 9-3, p. 49; R. Doc. 9-6, pp. 2-3, 6-17 (application and application summary).

last met the insured status requirements of the Social Security Act was December 31, 2024.[5] Plaintiff's DIB claim was initially denied on September 30, 2021.[6] Plaintiff timely sought reconsideration of the initial determination.[7] On August 10, 2022, the denial of benefits was affirmed on reconsideration.[8] Plaintiff then timely requested a hearing before an administrative law judge ("ALJ").[9] A hearing was held on April 12, 2023, at which Plaintiff, who was represented by counsel, testified.[10] Vocational Expert ("V.E.") Kathy Bottroff ("Bottroff") also testified.[11] The ALJ adjourned the April 12, 2023 hearing and held an additional hearing on August 17, 2023 to obtain supplemental V.E. testimony.[12] During the August 17, 2023 hearing, Plaintiff testified and was represented by counsel.[13] V.E. Ashley G. Lastrapes ("Lastrapes") was admitted as a vocational expert and testified, over Plaintiff's objection.[14] On December 7, 2023, the ALJ issued a notice of unfavorable decision.[15] Plaintiff timely filed a counseled request for review by the Appeals Council.[16] On May 6, 2024, the Appeals Council denied Plaintiff's request for review.[17]

---

[5] R. Doc. 9-7, p. 34; R. Doc. 9-4, p. 2 and *see, e.g.,* R. Doc. 9-6, p. 33. Plaintiff's earnings history is at R. Doc. 9-6, pp. 18-44. The ALJ's decision also notes that Plaintiff's date last insured is December 31, 2024. R. Doc. 9-3, p. 19. The date last insured is not at issue in this appeal.

[6] R. Doc. 9-4, pp. 2-12. Plaintiff was notified of the decision by letter dated September 30, 2021. R. Doc. 9-5, pp. 18-26.

[7] R. Doc. 9-5, p. 27.

[8] R. Doc. 9-4, pp. 13-27. Plaintiff was notified of the decision by letter dated August 15, 2022. R. Doc. 9-5, pp. 29-37.

[9] R. Doc. 9-5, pp. 38-39. Plaintiff requested the hearing on August 19, 2022. *Id.*

[10] R. Doc. 9-5, pp. 2-17, 113-14 (fee agreement and appointment of representative); R. Doc. 9-5, p. 81 (notice of hearing); R. Doc. 9-3, pp. 47-74 (transcript of hearing).

[11] R. Doc. 9-7, pp. 87-96 (resume).

[12] R. Doc. 9-3, p. 73 and *see* p. 95.

[13] R. Doc. 9-3, pp. 75-101 and *see* Plaintiff's post-hearing brief at R. Doc. 9-7, pp. 112-16.

[14] R. Doc. 9-3, pp. 94-95 and R. Doc. 9-7, pp. 107-09 (resume).

[15] R. Doc. 9-3, pp. 15-46.

[16] R. Doc. 9-3, pp. 8-9 and R. Doc. 9-5, pp. 119-20; R. Doc. 9-7, pp. 117-21.

[17] R. Doc. 9-3, pp. 2-6.

On June 27, 2024, Plaintiff timely filed his Complaint in this Court.[18]  Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[19]

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[20]

## III.    PLAINTIFF'S ASSIGNMENT OF ERROR

Plaintiff argues that the ALJ failed to resolve an alleged conflict in the testimony by the two Vocational Experts regarding whether a hypothetical individual with Plaintiff's RFC and RFC limitations can work, *i.e.*, V.E. Bottroff found that jobs do not exist, versus V.E. Lastrapes, who found that jobs do exist. Plaintiff contends that the ALJ's determination that Plaintiff can work based on V.E. Lastrapes' non-favorable testimony cannot be affirmed considering the unresolved conflict in the testimony of the two Vocational Experts.[21]

---

[18] R. Doc. 1.

[19] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

[20] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[21] Tangentially, Plaintiff also argues that the ALJ erred in finding that V.E. Bottroff's testimony was internally inconsistent, Only the ALJ findings relevant to this assignment of error are addressed.

## IV.  LAW AND ANALYSIS

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[22]  Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a preponderance.[23] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[24] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[25]  In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[26]

Additionally, if the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[27]

Here, because the ALJ applied the correct legal standards, and substantial evidence supports his findings.

---

[22] *Richardson v. Perales*, 402 U.S. 389-90, 401 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (superseded by statute on other grounds, *see Stancle v. Colvin,* No. 4:15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016)).

[23] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[24] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[25] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[26] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[27] *Bruno, M*, citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

### A. The April 12, 2023 Hearing and V.E. Bottroff's Inability to Answer the ALJ's Hypothetical

At the first step of the sequential evaluation process for disability determinations, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 31, 2019.[28] At the second step, the ALJ found that Plaintiff has the following severe impairments: herniated nucleus pulposus at L5-S1, right ankle osteoarthritis, diabetes mellitus, obesity, and depression.[29] At the third step, the ALJ found that none of these impairments, individually, or in combination, meets or medically equals the severity of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.[30] Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work,[31] with the following limitations:

> [O]ccasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally push/pull with the bilaterally lower extremities; use of an assistive device (cane) for ambulation; an option to sit or stand after sixty minutes for up to five minutes without increased time off task; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; must avoid moderate exposure (no more than occasional) to hazards (moving mechanical parts/unprotected heights); understand, remember, and carry out simple to detailed but uninvolved instructions; **instructions are to be given orally or by demonstration;** can maintain attention and concentration for no longer than two hour blocks of time; use judgment to make only simple work-related decisions; perform only occasional production

---

[28] R. Doc. 9-3, p. 21.

[29] *Id.*

[30] *Id.* at pp. 22-25.

[31] An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making an RFC finding, the ALJ must consider all the claimant's impairments, including non-severe ones. 20 C.F.R. § 404.1520(e), 20 C.F.R. § 404.1545 and *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8P (S.S.A. July 2, 1996), 1996 WL 374184.

5

rate work (assembly line/hourly quotas); and tolerate only occasional changes in the work setting.[32]

At the fourth step of the sequential evaluation process, the ALJ found that Plaintiff cannot perform his past relevant work of heating and air conditioning installer-servicer helper, which is classified as heavy and skilled (SVP 6),[33] because the demands of that work exceeded his RFC.[34] Plaintiff does not contest any of the ALJ's findings at steps one through four.

At the fifth step, the ALJ found that, considering Plaintiff's age (younger individual aged 44 on the disability onset date),[35] limited education (completion of eighth grade),[36] work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[37] Because Plaintiff's ability to perform the full range of light work was impeded by additional limitations, the ALJ relied on vocational expert testimony. At the April 12, 2023 hearing, and with no objection from Plaintiff, the ALJ questioned V.E. Bottroff regarding whether jobs existed for a hypothetical individual with Plaintiff's same age, education, work

---

[32] R. Doc. 9-3, pp. 24-25 (emphasis added). The ALJ based his RFC determination on Plaintiff's report of symptoms, impairments, medical records over the prior five-year period, and medical providers' opinions, as well as the State agency consultants' opinions.

[33] DOT 637.664-010. Specific Vocational Preparation ("SVP") is the amount of lapsed time needed to learn the techniques, acquire the information, and "develop the facility" needed for average performance in a specific job-worker situation. SVP comes from vocational education, civilian, military, and institutional work experience, apprenticeship, and from in-plant and on-the-job training. SVP 6 corresponds to skilled work. DOT Appendix C, Components of the Definition Trailer found at https://occupationalinfo.org/appendxc_1.html and *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions,* SSR 00-4p (S.S.A. Dec. 4, 2000), 2000 WL 1898704.

[34] R. Doc. 9-3, p. 36.

[35] R. Doc. 9-3, p. 36 and R. Doc. 9-6, p. 2 (Plaintiff's date of birth is November 27, 1974). 20 C.F.R. § 404.1563 defines claimants aged 18-49 as "younger individuals." Plaintiff was 49 at the time of the ALJ's decision.

[36] R. Doc. 9-3, p. 36 and R. Doc. 9-3, pp. 55, 62 (Plaintiff's testimony of leaving school after completion of eighth grade, being placed in special education classes, not being able to read or spell, and having had a childhood fever that resulted in short term memory loss and difficulty remembering things if not consistently repeated); R. Doc. 9-7, pp. 99-100, 103 (Plaintiff's Individual Evaluation Integrated Report, noting that Plaintiff is learning disabled with reading and spelling skills below the third grade level); and R. Doc. 9-7, p. 31 (Plaintiff's Function Report-Adult, completed by his wife (R. Doc. 9-3, p. 92), in which he noted that he is unable to read written instructions but can follow spoken instructions "very well.").

[37] R. Doc. 9-3, pp. 37-39.

6

experience, and the RFC noted above (except for the requirement that the individual be able to occasionally push/pull with the bilateral lower extremities). V.E. Bottroff first testified that three light exertional jobs existed with the noted RFC, including parking lot attendant, storage facility rental clerk and cashier.[38] Relevant to this appeal, Plaintiff's counsel questioned V.E. Bottroff regarding how the three light jobs she suggested, which they both presumed featured written instructions at the work site to refresh employees as to their tasks, could be performed by an individual "who is unable to read or write…?" V.E. Bottroff responded that those jobs "could not be done if you were illiterate."[39] In light of this response, Plaintiff's counsel then asked if the three light jobs V.E. Bottroff identified would not apply to the hypothetical individual with the same age, education, work experience, and RFC as Plaintiff, and the following exchange took place:

> A. Well, we should go back to what the judge said that they would be, instructions would be given orally **or with only short written instructions.**
>
> Q. He didn't say short written instructions.
>
> ALJ: No, no, no. Let me clarify. The exact limitation was instructions in either oral form **or up to short demonstration** ["the RFC instruction limitation"].
>
> VE: Thank you. Well then, if there's no ability in the hypothetical worker to deal with any type of written instructions, these jobs would be inappropriate. And there would be no viable work.
>
> ATTY: Thank you.
>
> BY ADMINISTRATIVE LAW JUDGE:
>
> Q. All right. Ma'am, now I just want to clarify briefly. With the limitations that I gave regarding work, instructions in either oral form or up to short demonstration, are you saying that the three

---

[38] R. Doc. 9-3, pp. 66-67. Curiously, V.E. Bottroff identified these three light exertional jobs, even with the limitation of standing and/or walking for a total of two hours in an eight-hour workday, despite recognizing that light jobs require standing for at least six hours. R. Doc. 9-3, pp. 69-70. This contradiction is also addressed, below.

[39] R. Doc. 9-3, pp. 70-71.

examples of work that you identified would be incompatible with that?

A. That's correct.

Q. Okay. Would you be able to identify any work?

A. No.

Q. At the light level with instructions in either oral form or by short demonstration?

A. That's correct.

Q. So –

A. If there's no ability to read brief –

Q Ma'am, ma'am, ma'am, **I never said anything about hypothetical individual being illiterate.** I just merely stated if the person needed instructions in either oral form or up to short demonstration. In other words, the person had to be told what to do or shown what to do.

A. Your Honor, I mean no disrespect, but **I'm unclear as to where you want me to go with this**. The –

Q. You were –

A. -- attorney asked –

Q. Ma'am, ma'am, ma'am, you say you're unclear with where to go with this, how I want you to go with this. Is that what you said?

A. Yes, sir.

ALJ: Okay. You know, that's fine. What I'm going to do at this particular point is adjourn the hearing and hold a supplemental hearing with some additional vocational expert testimony….[40]

During the August 17, 2023 supplemental hearing, Plaintiff objected to the ALJ taking testimony from V.E. Lastrapes, contending that V.E. Bottroff already provided testimony and any

---

[40] R. Doc. 9-3, pp. 71-73 (emphasis added).

8

additional testimony was "unnecessary" and "asked and answered."[41] The ALJ overruled Plaintiff's objection, finding that the vocational testimony during the first hearing "was not sufficient to establish substantial evidence in this case," and admitted V.E. Lastrapes as an expert.[42] V.E. Lastrapes testified that a hypothetical individual with Plaintiff's age, education, work experience and RFC, including with the RFC instruction limitation, can perform at least three **sedentary** jobs that exist in significant numbers in the national economy. The ALJ then relied on V.E. Lastrapes' testimony to find that Plaintiff is not disabled.[43]

### B. Substantial Evidence Supports the ALJ's Rejection of V.E. Bottroff's Testimony and the ALJ's Obtaining of Supplemental Testimony From V.E. Lastrapes

Plaintiff argues that the ALJ's decision that Plaintiff could perform three sedentary jobs based on V.E. Lastrapes' testimony (addressed in more detail, *below)* cannot be affirmed because there is conflicting vocational expert testimony in the record regarding whether an individual with Plaintiff's limitations can perform any work. Plaintiff further argues that the ALJ's basis for dismissing V.E. Bottroff's testimony, which was that it was internally inconsistent, did not resolve the conflict because V.E. Bottroff's testimony (favorable to Plaintiff), was not internally inconsistent.[44]

Addressing the second argument first, Plaintiff argues that V.E. Bottroff's initial testimony that three light jobs existed was the result of her misunderstanding of the RFC's instruction limitation in the ALJ's hypothetical, which she understood to be a limitation requiring directions to be given orally or through *short written instructions*. However, once the RFC instruction

---

[41] R. Doc. 9-3, pp. 78, 94.

[42] R. Doc. 9-3, p. 95.

[43] R. Doc. 9-3, pp. 37-39.

[44] R. Doc. 13, pp. 2, 4-7 and R. Doc. 15, p. 2.

limitation was clarified to V.E. Bottroff as requiring directions to be given orally or by *demonstration*, V.E. Bottroff "confirmed for the ALJ that an individual who required instructions in oral form, up to short demonstration, could not perform the work she had identified, nor could they perform any other work in the national economy."[45] When Plaintiff objected to V.E. Lastrapes' subsequent non-favorable testimony as duplicative, the ALJ overruled that objection at the hearing on the basis that V.E. Bottroff's testimony was "not sufficient to establish substantial evidence in this case," and then upheld his ruling in his written opinion on the same basis, finding that "the first expert could not answer a hypothetical about a certain limitation given in the residual functional capacity," which was not sufficient to establish a basis for substantial evidence. The ALJ also found that V.E. Bottroff's testimony was "inconsistent regarding a material limitation."[46]

Plaintiff argues that V.E. Bottroff's testimony may have initially appeared inconsistent, but then she sought clarification from the ALJ. According to Plaintiff, after V.E. Bottroff received the corrected RFC instruction limitation from the ALJ, she "provided consistent testimony that there was no viable work for an individual who was unable to utilize written instructions."[47] Plaintiff argues that, despite the ALJ's statement that V.E. Bottroff was unable to provide an answer, she was able to answer the hypothetical. It was only after the ALJ asked V.E. Bottroff the same question three times that she became equivocal. Plaintiff additionally argues that the ALJ's allegation of an inconsistency in V.E. Bottroff's testimony is incorrect because she answered consistently at first, and, therefore, inconsistency is not grounds to reject her testimony. Plaintiff

---

[45] R. Doc. 13, pp. 3-4.

[46] R. Doc. 13, p. 4 citing R. Doc. 9-3, pp. 18-19, 95.

[47] R. Doc. 13, pp. 4-5.

contends that the ALJ has the duty to consider all evidence of record, not just evidence that supports his decision.[48]

First, Plaintiff argues that the testimony of the two vocational experts on the ultimate issue of whether an individual with Plaintiff's RFC could perform work in the national economy is directly contradictory.[49] Pursuant to SSR 86-8, the ALJ is required to "describe the deference offered to relevant evidence and 'must reconcile any significant inconsistencies,'" and his decision referred to the RFC instruction limitation as "material," so it is significant.[50] However, because the ALJ incorrectly found that V.E. Bottroff's testimony was inconsistent, he did not reconcile the inconsistency between her testimony and that of V.E. Lastrapes, and the failure to address this inconsistency requires that the Commissioner's decision be overruled because "because Agency's counsel is powerless to resolve it on the ALJ's behalf."[51] Plaintiff accuses the ALJ of "witness-shopping," which should not be permitted.[52] As such, Plaintiff argues that remand is required for further administrative proceedings due to the unresolved contradictory testimony.[53]

It is clear from the V.E Bottroff's testimony, considered as a whole, that she initially considered the wrong limitation, which she believed required short written instructions. However, even after the ALJ clarified his RFC instruction limitation as the one he initially specified, which

---

[48] R. Doc. 13, p. 5, citing *Loza v. Apfel,* 219 F.3d 378, 392 [sic, 393] (5th Cir. 2000) (other non-controlling decisions omitted).

[49] R. Doc. 13, pp. 6-7 and R. Doc. 15, pp. 2-3.

[50] R. Doc. 13, p. 6 citing *Titles II & XVI: The Sequential Evaluation Process,* SSR 86-8 (S.S.A. 1986), 1986 WL 68636 at *8; R. Doc. 9-3, p. 18. Plaintiff and the Commissioner both assert that SSR 86-8 has been rescinded effective June 22, 2024 but continues to apply to cases, such as this one, involving benefit applications filed prior to that date. R. Doc. 13, p. 6, n. 1 and R. Doc. 14, p. 10, n. 2 citing *Titles II and XVI: How We Evaluate Past Relevant Work*, SSR 24-2p (S.S.A. June 6, 2024), 2024 WL 2846571, 89 Fed. Reg. 48479-01 (June 6, 2024).

[51] R. Doc. 13, pp. 6-7 citing *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Copeland v. Colvin*, 771 F.3d 920, 927 (5th Cir. 2014); and *Newton,* 209 F.3d at 454. *See also* R. Doc. 15, pp. 2-3, 6.

[52] R. Doc. 15, pp. 6-7.

[53] R. Doc. 13, p. 8.

was for instructions to be given by short demonstration, V.E. Bottroff continued to respond to the ALJ's questions regarding whether jobs existed with reference to a limitation that the ALJ did not specify—that the hypothetical individual could not read written directions, which was a limitation injected into the questioning by Plaintiff's counsel.[54] V.E. Bottroff's response that no jobs existed for a hypothetical individual that could not read directions was not an RFC limitation in the hypothetical posed by the ALJ, and indeed, was not a limitation proven to apply to Plaintiff,[55] so it was irrelevant.[56] Contrary to Plaintiff's assertion, V.E. Bottroff did not respond to the ALJ's hypothetical as posed, requiring instructions orally or by short demonstration, instead assuming the hypothetical also including an inability to read written instructions. As the Commissioner points out, it is well-established that it is the province of the ALJ to assess a claimant's RFC, and

---

[54] While in reply, Plaintiff alleges that he is not arguing that Plaintiff is illiterate, it was Plaintiff's counsel who specifically raised the limitation of an inability to read and write in questions to V.E. Bottroff during the hearing regarding whether a hypothetical individual with that limitation could perform the jobs she identified. R. Doc. 9-3, p. 71 and R. Doc. 15, p. 5.

[55] Plaintiff testified he completed the eighth grade. R. Doc. 9-3, p. 55. In his decision, the ALJ noted that there is a presumption that someone who has completed at least a fourth-grade education can read or write a simple message in any language. However, the presumption can be overcome if the claimant provides evidence that he could not in fact read or write a simple message in any language. R. Doc. 9-3, p. 37, citing *How We Determine An Individual's Education Category*, SSR 20-01p (S.S.A. Mar. 9, 2020), 2020 WL 1285114, *3-4. The ALJ found that there was insufficient evidence to show that Plaintiff had the complete inability to read or write a simple message in any language as required for a finding of illiteracy for the purpose of the education category in light of several pieces of evidence, including a 2007 psychological consultative exam given as part of a prior disability claim that reflected Plaintiff could write "cat," had an IQ of 70 (borderline), had a low vocabulary subtest raw score of 16 and a scaled score of 4, and was able to drive and did not report issues with navigating street signs. R. Doc. 9-3, p. 37 and citing, in part, R. Doc. 9-8, pp. 3-8.

[56] Despite an assertion in Reply stating otherwise, Plaintiff (and V.E. Bottroff) assumes that the ALJ's actual RFC instruction limitation that directions be given orally or via short demonstration is the same as a limitation that the hypothetical individual cannot read or write or "deal" with written instructions because Plaintiff repeatedly relies on V.E. Bottroff's response that no work exists if the hypothetical individual cannot read written instructions. R. Doc. 13, p. 3, R. Doc. 15, p. 2 (*but see* p. 5, "Plaintiff has not alleged … that the limitations in the RFC meant that he should be considered illiterate.") and R. Doc. 9-3, p. 72. This assumption is unfounded. If the ALJ wanted the RFC instruction limitation to preclude written instructions or to address illiteracy, the ALJ would have so specified. However, the ALJ did not, presumably in light of his review of the other evidence of Plaintiff's reading and writing skills, *see* above. It is the ALJ's province to craft the RFC, and "[o]n review, we can not reweigh the evidence, try the issues de novo, or substitute our judgement for that of the Secretary." *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992).

the ALJ is not bound by a vocational expert's responses to questions that are based on assumptions that include unsupported limitations.[57]

Furthermore, at the end of the ALJ's follow-up questions, V.E. Bottroff specifically stated that she did not know how to answer the ALJ's hypothetical and therefore could not answer his questions. During the second hearing, the ALJ overruled Plaintiff's objection to the testimony of V.E. Lastrapes on the grounds that V.E. Bottroff's testimony was insufficient to establish substantial evidence. Plaintiff submitted a post-hearing brief reiterating Plaintiff's objection to V.E. Lastrapes' testimony.[58] In his decision, the ALJ squarely addressed Plaintiff's objection and upheld his ruling, setting forth his reasons as follows:

> The testimony of the vocational expert at the first hearing was inconsistent with herself on a material limitation. The first expert could not answer a hypothetical about a certain limitation given in the residual functional capacity, stating 'I am unclear as to where you want me to go with this.' Thus, this testimony is not sufficient to establish a basis of substantial evidence. Thus, this objection is again overruled.[59]

Therefore, setting aside any internal inconsistency in V.E. Bottroff's testimony, the ALJ provided an adequate explanation for rejecting V.E. Bottroff's testimony, which is that it was insufficient to establish substantial evidence because she could not answer the ALJ's hypothetical with the RFC limitations that he crafted.[60] The transcript of the April 12, 2023 hearing reflects V.E. Bottroff's

---

[57] R. Doc. 14, p. 6, citing *Randall,* 956 F.2d at 106 [sic, 107, n. 1], and *Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) ("A hypothetical, however, need only include impairments that are supported by the record and that the ALJ accepts as valid."). *See also Kelley v. Kijakazi,* No. 22-1104, 2023 WL 6406619, at *3 (W.D. Tex. Aug. 10, 2023), report and recommendation adopted, No. 22-1104, 2023 WL 6446206 (W.D. Tex. Sept. 29, 2023) ("Only where the testimony by the VE is based on a correct account of a claimant's qualifications and restrictions may an ALJ properly rely on the VE's testimony and conclusion.").

[58] R. Doc. 9-7, pp. 112-14.

[59] R. Doc. 9-3, pp. 18-19.

[60] *See, e.g., Greenspan,* 38 F.3d at 237 ("'[T]he ALJ has the sole responsibility for determining the claimant's disability status.' *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have

inability to respond, which is consistent with the ALJ's finding.[61] Due to the lack of substantial evidence presented by V.E. Bottroff, the ALJ did not err in obtaining supplemental testimony from V.E. Lastrapes, which he relied on as providing substantial evidence, *see* below. Plaintiff's objection to the supplemental testimony did not preclude the ALJ from admitting V.E. Lastrapes' testimony,[62] and the ALJ is permitted to obtain additional V.E. testimony, which Plaintiff recognizes.[63] Plaintiff's arguments lack merit.[64]

### C. Substantial Evidence Supports the ALJ's Finding That Sufficient Sedentary Jobs Exist That Plaintiff Can Perform, and Therefore Plaintiff Is Not Disabled

In his decision, the ALJ relied on the testimony of V.E. Lastrapes to determine the extent to which Plaintiff's RFC limitations erode the unskilled light occupational base. V.E. Lastrapes testified that the limitation of standing and/or walking for two hours (or any standing/walking requirement less than six hours) in an eight-hour workday would erode the light occupational base to sedentary work.[65] V.E. Lastrapes testified that an individual with Plaintiff's age, education,

---

recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott,* 770 F.2d at 485. In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.' *Id.* ….") (citations omitted).

[61] R. Doc. 9-3, pp. 71-73. Plaintiff does not offer an explanation for V.E. Bottroff's stated inability to respond to the hypothetical with the limitations posed by the ALJ, other than to say that the ALJ did not understand her answers (R. Doc. 13, p. 5); however, V.E. Bottroff's answers were premised on the incorrect assumption that the RFC instruction limitation was that the hypothetical individual could not read written instructions.

[62] *See* 20 C.F.R. § 498.217 ("(a) The ALJ will determine the admissibility of evidence. (b) Except as provided in this part, the ALJ will not be bound by the Federal Rules of Evidence but may be guided by them in ruling on the admissibility of evidence.").

[63] R. Doc. 15, p. 2, citing 20 C.F.R. § 404.900(b). *See also* 20 C.F.R. § 404.1566(e) ("Use of vocational experts and other specialists. If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.").

[64] Plaintiff's authority does not address the failure of a vocational expert to address a hypothetical and is, therefore, inapplicable. R. Doc. 13, p. 7, citing *Chenery Corp.*, 318 U.S. at 87; *Copeland,* 771 F.3d at 927; and *Newton,* 209 F.3d at 454.

[65] R. Doc. 9-3, pp. 96-97. V.E. Lastrapes' testimony on this point directly contradicts V.E. Bottroff's opinion that this limitation would not preclude light exertional jobs, further calling into question V.E. Bottroff's testimony (particularly

14

work experience and the RFC identified above would be able to perform the following occupations, all of which are sedentary and unskilled (SVP 2):[66] inspector, with 12,701 jobs nationally; waxer, with approximately 5,689 jobs nationally; and folder, with approximately 890 jobs nationally.[67]

The ALJ noted that while V.E. Lastrapes' testimony was inconsistent with the DOT to the extent that the DOT does not address some of Plaintiff's RFC's limitations, *i.e.*, the use of a cane, the option to sit or stand after sixty minutes, and the giving of instructions in oral form or by demonstration, there was a reasonable explanation for the discrepancy. V.E. Lastrapes relied on her education and experience to support her testimony as to those limitations, which the ALJ accepted as being reasonable, and found that her testimony was otherwise consistent with the DOT.[68] Because the ALJ found that Plaintiff is able to engage in other types of work that exist in

---

because V.E. Bottroff recognized that light work generally requires the ability to stand for up to 6 hours in an 8-hour workday. *See* R. Doc. 9-3, *compare* p. 67 *with* p. 69). The ALJ noted that Medical Vocational Grid Rule 201.19 was used based on V.E. Lastrapes' testimony that the reduced range of light exertion with the restriction of standing and/or walking for two hours in an eight-hour workday would erode the light work occupational base to sedentary work. R. Doc. 9-3, p. 38, citing R. Doc. 9-3, p. 96 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, RFC: Maximum Sustained Work Capacity Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s), Rule 201.19 (A finding of "not disabled" for a younger individual age 45-49, with limited or less education and with previous work experience as non-transferable (skilled or semi-skilled)); and citing *Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work,* SSR 83-12 (S.S.A. Jan. 1, 1983) (evaluating a limitation requiring alternating sitting and standing) (other citations omitted). *See also* 20 C.F.R. § 416.967(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

[66] SVP 2 corresponds to unskilled work. SSR 00-4p.

[67] R. Doc. 9-3, pp. 96-97 and referencing DOT 739.687-182 (The DOT lists this occupation as "Table Worker"); DOT 779.687-038; and DOT 690.686-066 (The DOT lists this occupation as "Toggle-Press Folder-and-Feeder"), respectively.

[68] R. Doc. 9-3, p. 38, citing R. Doc. 9-3, pp. 98-99 (V.E. Lastrapes' testimony regarding these limitations and her opinions on them were based on her education and experience); R. Doc. 9-7, pp. 107-110 (resume); and SSR 00-4p ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled…Information about a particular job's requirements or about occupations not listed in the DOT may be available…from a VE's or VS's experience in job placement or career counseling.").

significant numbers in the economy, the ALJ found that Plaintiff was not disabled from the July 31, 2019 disability onset date through the date of his decision.[69] This decision was supported by substantial evidence, and should be affirmed.[70]

## V. RECOMMENDATION

The analysis above demonstrates that Plaintiff's claims of reversible errors are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards, and substantial evidence supports the determination that Plaintiff is not disabled.

Accordingly,

**IT IS RECOMMENDED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **AFFIRMED**, and this action be **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on July 28, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[69] R. Doc. 9-3, pp. 38-39. Accordingly, the ALJ identified work that Plaintiff can perform with his RFC, including with the RFC instruction limitation, contrary to Plaintiff's assertion. R. Doc. 15, p. 5.

[70] Because the ALJ adequately explained the reasons for rejecting V.E. Bottroff's testimony and obtaining supplemental vocational expert testimony, and because substantial evidence supports his decision that Plaintiff is capable of performing other work and is not disabled as explained above, the parties' other arguments are not addressed.

16